IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>RICHARDSON DANGLEBEN, JR.,<br><br>Defendant. | Case No. 2023-cr-00072 |

### REPLY IN SUPPORT OF THE MOTION TO STAY

AND NOW comes the United States of America, by and through Delia L. Smith, United States Attorney for the District of the Virgin Islands, and Michael J. Conley, Criminal Chief, and Adam F. Sleeper, First Assistant United States Attorney, and respectfully submits this Reply to defendant, Richardson Dangleben, Jr.'s, Response to Government Motion to Stay Proceedings (Doc. No 129). Consistent with the Court's Order (Doc. No. 131) this Reply also addresses 1) whether the government has a right under 18 U.S.C. § 3593 to change its position on seeking the death penalty; and 2) if the government waived or forfeited the right to seek the death penalty when it previously provided notice that it would not.

### Background

On November 2023, this Court set a January 12, 2024 deadline for the government to provide notice of its intent to seek the death penalty (ECF No. 35) and set a trial date of October 28, 2024 (ECF No. 38). The notice deadline was later extended to February 12, 2024, at which time the Court ordered that "no further request to extend the deadline **SHALL** be entertained absent exigent circumstances and supporting evidence." *Id*. (emphasis original). On February 7, 2024, this office announced it would not pursue capital punishment. (ECF No. 46).

On July 29, 2024, Dangleben moved to extend the deadlines for motions and disclosure of

1

experts, acknowledging that the requested delay would necessitate a continuance of the October 28, 2024 trial date. (ECF No. 55). On August 19, 2024, the Court granted the extension and vacated the trial date, announcing it would set a new one at a subsequent motion hearing. (ECF No. 59). The motions hearing has, itself, been continued to an unidentified date, and the Court has not yet rescheduled the trial (ECF No. 90, 132).

Amidst this uncertain schedule, the newly confirmed Attorney General issued a Memorandum on February 5, 2025, directing a review of all decisions not to seek the death penalty issued by the Department of Justice between January 20, 2021 and January 19, 2025 (ECF No. 122). To ensure adequate time for that review, the government sought to stay proceedings, and Dangleben objected, arguing the government cannot revise its decision not to seek the death penalty following the expiration of the Court's February 12, 2024 deadline (ECF 129).[1] The Court subsequently directed the government reply and address 1) whether it has a right under 18 U.S.C. § 3593 to change its position; and 2) whether that right was waived or forfeited by its duly filed notice that it would not pursue capital punishment.

## Argument and Authority

I. **The Federal Death Penalty Act Permits the Government to Change its Position on Pursuit of the Death Penalty**

Due process requires adequate notice of the possibility that a sentence of death may be imposed. *See generally Lankford v. Idaho*, 500 U.S. 110, 111, 119-21 (1991). To satisfy that requirement, some jurisdictions quantify the adequacy of notice. For instance, Arizona requires notice within 60 days of arraignment. Ariz. R. Crim. P. 15.1. Kansas requires notice within 7 days of arraignment. K.S.A. 21-6617(a). In contrast, the Federal Death Penalty Act (18 U.S.C. §§ 3591-3599) ("FDPA") places a single temporal limitation on the filing of any notice of intent to seek capital

---

[1] In his Opposition, Dangleben requests a scheduling order that would allow his learned counsel an opportunity to more fully address the merits of the motion to stay. *See* ECF No.129 at 7-9. The government has no objection to this request.

2

punishment: the government must file its notice "a reasonable time before the trial or before the acceptance by the court of a plea of guilty." § 3593(a).

No statutory provision requires the government to formally file notice of a decision not to seek the death penalty. Admittedly, once it announces a decision to seek, the government may amend the aggravating factors upon which it relies to justify a sentence of death for good cause shown.[2] § 3593(a). But no statutory provision obliges it to justify a decision to pursue capital punishment in the first instance, after initially indicating it would not. The government would have to honor an *agreement* not to seek the death penalty in exchange for consideration, like a plea, but the announcement of a decision to forgo capital punishment in this case did not hinge on anything of value from Dangleben. *See* ECF No. 47. He, therefore, has no right to enforce the prosecution's earlier representation. *Cf. United States v. Hodge*, 412 F.3d 479, 485 (3d Cir. 2005) (noting the government must strictly adhere to bargains it strikes with defendants). As such, this Court should not construe waiver or forfeiture from the government's previously announced decision to forgo a capital prosecution in this case. Indeed, the Court should hold that any decision to seek the death penalty will likely satisfy the timing provisions of the FDPA.

As this Court has recognized, an evaluation of timeliness under the § 3593(a) standard involves "an inquiry into the objective reasonableness of the time between issuance of the death notice and the trial itself, in light of the particulars of the charged offense and the anticipated nature of the defense." ECF No. 46 at 4 (quoting *United States v. Ferebe*, 332 F.3d 722, 727 (4th Cir. 2003). Given the variables at hand, courts have not set a brightline rule for the reasonability of notice filing, approving at least one filed 113 days before trial. *See Ferebe,* at 737 (noting a nationwide average of 8.4 months); *see e.g.*, *United States v. Wilk*, 452 F.3d 1208, 1221 (11th Cir. 2006) (finding six month reasonable);

---

[2] Like the reasonable time requirement, § 3593's good cause standard protects against undue delay and unfair prejudice to a defendant facing a capital trial. *See United States v. Le*, 326 F. Supp. 2d 739, 741-42 (E.D. Va. 2004). Those concerns are not implicated if the government, having previously announced it will not seek the death penalty, gives notice that it will a reasonable time before trial.

3

*United States v. Breeden*, 366 F.3d 369, 374 (4th Cir. 2004) (same); *United States v. Ponder,* 347 F. Supp. 2d 256, 270 (E.D. Va. 2004) (finding four months reasonable); *United States v. Cuong Gia Le*, 311 F. Supp. 2d 527, 534-35 (E.D. Va. 2004) (finding 113 days reasonable); *cf. United States v. McGriff*, 427 F. Supp. 2d 253, 270-72 (E.D.N.Y. 2006) (finding 12 days unreasonable but granting continuance to cure prejudice).

This case has no existing trial date, precluding a showing that the government might file a possible notice of intent to seek the death penalty an unreasonable time beforehand. For want of a scheduled trial, Dangleben cannot show a notice will leave him with inadequate time to prepare a capital defense, nor can he show that this case sounds within a preclusive doctrine like that announced in *United States v. Ferebe*. There, the Fourth Circuit Court of Appeals affirmed the rejection of a notice of intent to seek the death penalty filed approximately six weeks before the commencement of a scheduled trial. *See* 332 F.3d at 742-43 (Niemeyer, J., dissenting). Here, again, no trial schedule exists.

In the absence of a trial date against which to compare the timeliness of any possible notice in this case, Dangleben can only complain to the Court about the pace of prosecutorial decision making. The Court, however, has no authority to control the Department of Justice's internal processes. See, e.g., *United States v. Tsarnaev*, No. 13-10200-GAO, 2013 WL 5701582, *2 (D. Mass. Oct. 18, 2013) (finding control of Department's processes "well beyond the scope of any inherent authority to manage judicial business."); *United States v. Hardrick*, No. 10-202, 2011 WL 2516340, *2 (E.D. La. June 22, 2011) (concluding the court's "authority . . . does not extend to controlling internal deadlines within the Justice Department").

Deprived of a statutory timeliness argument, the defendant cites the *American Bar Association Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases* (2003), asserting that once a formal filing of a "no seek" notice has been made the death penalty is no longer a "legal possibility." ECF No. 129 at 4. The ABA provides useful guides for assessing the

reasonableness of defense counsel's performance.  The association's views do not constitute binding authority in assessing defense counsel, much less do they provide a basis for regulating prosecutorial discretion.  *See Bobby v. Van Hook* 558 U.S. 4, 7-8 (2009) (recognizing that ABA "standards and the like are only guides to what reasonableness means, not its definition" (cleaned up)). In short, the guidelines do not estop the government from pursuing the death penalty after indicating it would not do so, and the ABA has no legislative or judicial authority to enact such a bar.  As noted, no legal bar exists for cases in the procedural posture, where the government has not bound itself to forgo capital punishment.

As a broad policy matter, moreover, the Court should not strike or bar the death penalty on the basis of circumstances outside the prosecution's control.  Courts have repeatedly equated the striking of a notice of intent to seek the death penalty with dismissal of an indictment or some part of one.  *See United States v. Lopez-Matias*, 522 F.3d 150, 152-53 & n.6 (1st Cir. 2008) (collecting cases regarding interlocutory jurisdiction and observing that "in dismissing the Notice, the district court effectively dismissed a significant portion of the counts against the defendant" (internal quotes omitted)); *accord United States v. Frye*, 372 F.3d 729, 733 (5th Cir. 2004).  Dismissal is among "the most draconian sanctions" and ordinarily employed "only when a plaintiff's misconduct is extreme." *Vázquez-Rijos v. Anhang*, 654 F.3d 122, 127 (1st Cir. 2011) (quoting *Young v. Gordon*, 330 F.3d 76, 81 (1st Cir. 2003)); *see also United States v. Santana*, 6 F.3d 1, 11 (1st Cir. 1993) (noting that courts should "refrain from using the supervisory power to conform executive conduct to judicially preferred norms by dismissing charges, absent cognizable prejudice to a particular defendant").

Here, the government has not engaged in any misconduct, much less any misconduct that would merit the most draconian of sanctions.  The government did not request departure from the earlier schedule, and it did not create the circumstances that led Dangleben to seek a continuance that caused a vacatur of the trial date.  *See* ECF No. 55 (requesting delay to facilitate expert disclosures). Rather, the government is merely responding to a new directive from the Attorney General.  In short,

the government has not engaged in any conduct that should merit a sanction, much less one that would have a preclusive impact on its ability to pursue the full panoply of penal consequences.

Accordingly, this Court should evaluate the timeliness of any notice of intent to seek the death penalty—if filed—against any existing trial date. In the absence of such a date, the Court should find that any hypothetical notice is presumptively reasonable, for want of any demonstrable possibility that Dangleben will not have time to prepare for trial.

## II. Exigencies Will Excuse Any Failure to Comply with the Court's Earlier Deadline, to the Extent it Applies in this Setting

Although no trial date exists against which to measure the timeliness of a decision to pursue capital punishment against Dangleben, the fact remains that this Court previously announced a deadline for a notice of intent to seek the death penalty. This Court should, however, conclude that the vacatur of the trial date vitiated the effect of that deadline. Even if the deadline retained some efficacy, the Court should further conclude that exigent circumstances permit its extension.

This Court enjoys inherent authority to control its docket. *Knoll v. City of Allentown*, 707 F.3d 406, 409 (3d Cir. 2013). In view of that authority, it can set deadlines for notices of intent to seek the death penalty. *See, e.g., Tsarnaev*, 2013 WL 5701582, at *2. Under that authority, the Court imposed a February 12, 2024 notice deadline, consonant with the then-existing trial date. *See* ECF No. 46 at 2. That deadline, as noted, sounded within the statutory and constitutional limitations on pursuit of the death penalty. *See id*. (acknowledging the court's scheduling authority but recognizing the government's obligation under § 3593(a) to file its notice "a reasonable time before the trial"). Because the trial date was vacated, the need to ensure preparation time through a February 12, 2024 notice deadline also ceased to exist.

The particulars of the case do not require fidelity to the original deadline. The case, previously designated as complex (ECF No. 38), remains in its preliminary stages: trial remains unscheduled, no substantive motions have been decided, and the deadline for motions has not passed. Moreover, the

defendant has now been appointed learned counsel. (ECF No. 133). Given the circumstances at hand, the Court should conclude that its initial notice deadline now lacks force. To the extent the Court disagrees, and finds the deadline retains its currency, identifiable exigencies should justify an extension, as contemplated in the order that established the time limit on notices (ECF No. 35).

Black's Law Dictionary defines "exigent circumstances" as "[a] situation that demands unusual or immediate action and that may allow people to circumvent usual procedures." Black's Law Dictionary 260 (8th ed.2004). *In re Anderson*, No. 06-00047S, 2006 WL 314539, at *2 (Bankr. N.D. Iowa Feb. 6, 2006); *see e.g.*, *Burns v. Swenson*, 430 F.2d 771, 779 (discussing the "exigencies of unusual or emergency situations); *Israel v. Odom*, 521 F.2d 1370, 1373 (7th Cir. 1975) (using "unusual" and "exigent" as synonyms).

In this case, the Attorney General of the United States as "the Nation's chief law enforcement officer" and the ultimate decisionmaker on pursuit of the death penalty (*Mitchell v. Forsyth*, 472 U.S. 511, 520 (1985); *United States v. Lee,* 274 F.3d 485, 489 (2001)) has ordered a broad review of capital case decisions made during the prior administration. That decision was unforeseen by the Court and parties when the initial deadline was imposed and extended. More to the point, the government could not have predicted the Attorney General's decision when this Court vacated the previous trial date, the procedural step that serves as necessary predicate to reconsideration of the death penalty decision in this case. *See, supra*, Arg. I. Given the government's good faith participation in scheduling this case and the capital decision process, this Court should conclude that exigent circumstances permit extension of its notice deadline, to the extent it might bar a decision to seek the death penalty at this time.

Indeed, the imposition of a bar would—as argued above—constitute a draconian sanction in a circumstance in which the government has done nothing to merit any sanction at all.

**Conclusion**

For these reasons the Court should grant its motion to stay and afford the government the opportunity to review the no seek decision.

Respectfully submitted,

DELIA L. SMITH,
United States Attorney

Dated: March 2, 2025        By:   */s/* Michael J. Conley
Michael J. Conley
Criminal Chief
U.S. Attorney's Office
District of the Virgin Islands
Ron de Lugo Federal Building
5500 Veterans Drive
St. Thomas, VI 00802
Telephone: 340-774-5757
Michael.Conley@usdoj.gov

*/s/* Adam F. Sleeper
Adam F. Sleeper
First Assistant United States Attorney
U.S. Attorney's Office
District of the Virgin Islands
Ron de Lugo Federal Building
5500 Veterans Drive
St. Thomas, VI 00802
Telephone: 340-774-5757
Adam.Sleeper@usdoj.gov