IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>RICHARDSON DANGLEBEN, JR.,<br><br>Defendant. | Case No.: 3:23-cr-72 |

### RESPONSE TO DEFENDANT'S SUPPLEMENTAL BRIEF

The United States of America, by and through Delia L. Smith, United States Attorney for the District of the Virgin Islands, Adam Sleeper, First Assistant United States Attorney, and Michael Conley, Criminal Chief, respectfully submits this Response to defendant, Richardson Dangleben, Jr.'s, Supplemental Brief re: Estoppel and Laches docketed at ECF No. 146.

As an initial matter, the Government notes that although the Government initially moved to stay proceedings in this matter, there are no longer any deadlines to stay. The defendant currently has no scheduled trial date and has not had a scheduled trial date since August 2024. ECF No. 59. And the defendant's omnibus hearing and response deadlines were stayed without date, on the defendant's motion, after the Government filed its motion to stay. *See* ECF Nos. 130, 132. So, the parties are no longer in a situation where there are existing scheduled proceedings, and the Government is seeking a stay, placing the burden on the Government to show a stay is appropriate. Rather, the parties are both merely presenting their positions regarding the appropriate date and time when the omnibus hearing and trial should be scheduled.

Framed this way, it is far from clear whether the Court should even address whether the

Government is in some way estopped from changing its position on the death penalty.[1] The Court has not determined when it would intend to hold a multi-day omnibus hearing and the trial in this matter, and the defendant has not proposed a deadline for filing his responses to the remaining pending motions, a date for the omnibus hearing, or a date for the trial—regardless of the outcome of the Government's review. Further, the Government notes that defense counsel have agreed to appear before the Capital Case Review Committee on April 28th, allowing the Government's review to proceed expeditiously.

With that said, the Government turns to the arguments raised in the defendant's supplemental brief. For the reasons stated below, the Government is not judicially estopped or equitably estopped from changing its position on the death penalty in this case, and laches does not apply.

### I.    Judicial and equitable estoppel do not apply when, as here, the Government has not acted in bad faith.

In his supplemental brief, the defendant urges the court to apply judicial and equitable estoppel to prevent the Government from changing its position on seeking the death penalty against the defendant. But those doctrines are sanctions reserved for parties who have acted in bad faith or engaged in misconduct. Because the Government has done neither, it would be inappropriate to use estoppel to punish the Government.

In the Third Circuit, judicial estoppel does not apply unless: (1) the party to be estopped has taken two positions that are irreconcilably inconsistent; (2) the party's change in position was "in bad faith – *i.e.*, with intent to play fast and loose with the court"; and (3) no sanction short of

---

[1] The most appropriate time to address that issue would be in the context of resolving a motion to strike filed by the defendant if, after the Government's review, it determines it will seek the death penalty and files a notice of intent to do so.

judicial estoppel "would adequately remedy the damage done by the litigant's misconduct." *Montrose Med. Grp. Participating Sav. Plan v. Bulger*, 243 F.3d 773, 784 (3d Cir. 2001); *Klein v. Stahl GMBH & Co. Maschinefabrik*, 185 F.3d 98, 111 (3d Cir. 1999); *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.,* 81 F.3d 355, 360 (3d Cir. 1996); *United States v. Biden*, 729 F. Supp. 3d 430, 443 (D. Del. 2024). A finding of bad faith "must be based on more than" the existence of an inconsistency. *Klein* 185 F.3d at 111. The party seeking to be estopped must have behaved in a manner that is somehow culpable. See *Ryan Operations*, 81 F.3d at 362 (calling judicial estoppel an 'extraordinary remedy" that may not be employed unless the contradiction is used as a means of obtaining *unfair* advantage).

Similarly, to succeed on a claim of equitable estoppel against the Government, the opposing party must not only prove all the elements of equitable estoppel, but also that the Government committed affirmative misconduct*. Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc.*, 467 U.S. 51, 64 (1984); *see also In re Flying W Airways*, Inc., 341 F. Supp. 26, 75 (E.D. Pa. 1972) ("having found that [the secured creditors] are not guilty of bad faith, a fortiori they are not guilty of the type of conduct necessary to constitute equitable estoppel."); *Jordan v. Fed. Exp. Corp.,* 914 F. Supp. 1180, 1192 (W.D. Pa. 1996) (refusing to apply equitable estoppel in the absence of "bad faith, affirmative misrepresentation or concealment"); *Gramm v. Bell Atl. Mgmt. Pension Plan*, 983 F. Supp. 585, 592 (D.N.J. 1997) (requiring affirmative acts of fraud or similarly inequitable conduct). Through this affirmative misconduct requirement, "[t]he Supreme Court has imposed a more stringent standard for estopping the government because there is a strong public interest in upholding the rule of law, even where hardship may result to individuals in particular cases." *Charleston Hous. Auth. v. U.S. Dep't of Agric*., 419 F.3d 729, 739 (8th Cir. 2005).

There is no basis to conclude that the notice not to seek the death penalty, ECF No. 47, was anything but a genuine expression of the Government's intention at the time of filing. The defendant's supplemental brief makes clear there is "no basis for doubting the veracity" of the attorneys working at the United States Attorney's Office who made the filing.[2] Nor is there reason to conclude that leadership in the Department of Justice who authorized the no seek decision were acting in bad faith; indeed, the defendant's supplemental brief acknowledges that the Biden administration issued a moratorium on executions and had generally not authorized new death penalty cases. *See* ECF No. 146-1, at 3. And there is no reason to conclude that the decision to review all previous no seek cases was made in bad faith. As the defendant's brief concedes, the decision was made by a new Attorney General representing a new administration who holds more favorable views on the death penalty.[3]

On July 29, 2024, counsel for the defendant moved to extend the date for deadlines and expert disclosures—knowing that it would trigger a continuance of the October 28, 2024, trial date. *See* ECF No. 55. Counsel for the defendant contends that he would not have continued this trial date had he known the decision not to seek the death penalty could be reversed, ECF No. 146, at 2, and accuses the Government of engaging in "bait-and-switch tactics." By all accounts, at the time the defendant moved to continue the trial date, the attorneys for the Government also believed the case would remain as a no seek case. This is simply a case where the incoming administration decided to review *all* previous no seek decisions made by the outgoing administration. There is no

---

[2] The Government does not generally contest the defendant's assertions regarding statements by Government counsel. Government counsel does, however, deny expressing that that "the case went federal because they didn't trust the local courts not to release Mr. Dangleben."

[3] For these same reasons the defendant's claim that the Government has made a "material misrepresentation," ECF No. 146, at 6, must be rejected. There was no misrepresentation because the notice of intent not to seek was genuine.

bad faith or misconduct.

While the lack of bad faith or misconduct is dispositive, the Government also briefly addresses prejudice/detriment to the defendant. The defendant's arguments on this point are premature, as no decision has been made as of this date that the Government will, in fact, seek the death penalty.

But even if the Government does determine that it will pursue the death penalty, the defendant's claims of prejudice are unavailing. The defendant attempts to assert prejudice, in part, based on his ability to effectively present mitigation evidence to the Capital Case Review Committee. *See, e.g.*, ECF No. 3-4, 7, 9. But the Capital Case Review Committee is an internal process governed by the Justice Manual. *See* Justice Manual § 9-10.000. And the Justice Manual merely "provides internal DOJ guidance"; "[i]t is not intended to, does not, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any party in any matter, civil or criminal." Justice Manual § 1-1.200. So, the defendant has no right, enforceable by this Court, involving the Case Review Committee. *See United States v. Wilson*, 413 F.3d 382, 389 (3d Cir. 2005) ( ". . . Department of Justice guidelines and policies do not create enforceable rights for criminal defendants."); *see, e.g.*, *United States v. Crusius*, No. EP-20-CR-00389-DCG, 2020 WL 4340550, at *5 (W.D. Tex. July 28, 2020) (applying that principle and holding that the Death Penalty Protocols in the Justice Manual did not provide judicially-enforceable rights related to the presentation of mitigation evidence to the Capital Case Review committee).

Moreover, the Attorney General announced the decision to review Biden Administration no-seek determinations on February 5, 2025. Thus, counsel for the defendant was on notice that the Government was re-evaluating its decision. And counsel could have commenced a mitigation investigation then. A decision by defense counsel not to do so is not attributable to the Government.

The defendant also appears to contend that allowing the Government to now seek the death penalty would be unreasonable because the Government's delay has denied him the ability to present a full and fair defense on the merits at trial, and he has not pursued a mitigation investigation. ECF No. 146, at 9. But the opportunity for the defendant to prepare a mitigation case has not passed. This matter remains in its preliminary stages. No evidentiary hearing on pending motions is scheduled, and no substantive motions have been decided. Most importantly, a trial date has not yet been scheduled. Any claim of prejudice can be cured by setting a trial date that will provide the defendant an opportunity to investigate mitigation. *Cf. United States v. Wilk*, 452 F.3d 1208, 1222-24, n.28 (11th Cir. 2006) (finding that court could address timeliness by continuing trial date); *United States v. McGriff*, 427 F. Supp. 2d 253, 267-69 (E.D.N.Y. 2006) (same). Indeed, it is for these reasons that the Government has contended that the defendant can be given adequate notice of the possibility that a sentence of death could be imposed. The Government also notes, again, that defense counsel could have commenced a mitigation investigation back in early February.

Defense counsel further asserts prejudice based on his contention that, if he had known that the Government could change its position on the death penalty in this matter, he would not have moved to continue the October trial. While the Government does not contest that defense counsel may believe that is so, defense counsel is operating in hindsight, and the Government does not believe the Court should credit his assertion. Essentially, defense counsel is contending that if, in July 2024, he were aware that the Government could re-examine its determination of whether to seek the death penalty, then he would have not filed a motion to continue—even though he filed the motion due to the need for additional time to adequately prepare to present a defense to serious charges, *see* ECF No. 55—due to the possibility that the President Trump would win the election,

6

the possibility that the new Attorney General would order a review of death penalty decision, and the possibility that after that review, the Department of Justice would change its decision. That contention is highly speculative.

Accordingly, the Court should reject the defendant's estoppel arguments.

## II.     Laches also does not apply.

The defendant also contends that the doctrine of laches applies. But, as the defendant acknowledges, laches is unavailable against the United States "proceeding in [its] sovereign capacity[.]" *Person v. United States*, 112 F.2d 1, 2-3 (8th Cir. 1940); *United States v. Summerline*, 310 U.S. 414, 416 (1940). Few acts are more quintessentially sovereign than the prosecution of violent crime. *See United States v. Morrison*, 529 U.S. 598, 618 (2000). The doctrine of laches, therefore, cannot be used to prevent the government from changing its position on seeking the death penalty.

Even if the laches did apply, the defendant's argument would fail due to lack of prejudice, as previously discussed.

Accordingly, the Court should schedule a trial date that affords the Government an opportunity to review the previous administration's no seek decision.[4]

---

[4] The defendant previously made various arguments in a surresponse that the Government has not been provided an opportunity to respond to, such as a procedural due process argument, an argument that the Government's motion should be construed as a motion for reconsideration, and an argument that the Government's actions are based on improper political considerations. *See* ECF No. 140. The Government requested leave to respond to those arguments, either in writing or at oral argument. ECF No. 145, at 20-22. The Government was not granted leave to address those arguments in writing; rather, the parties' additional briefing was limited to judicial estoppel and laches. *Id.* at 41-43. For that reason, the Government does not address those arguments here. The Government does, however, respectfully note its objection to the Court granting any relief premised on those arguments without providing the Government an opportunity to respond to them, either orally or in writing.

                                           Respectfully submitted,

                                           DELIA L. SMITH,
                                           United States Attorney

Dated: March, 28, 2025          By:     *s/ Michael J. Conley*
                                                       Michael J. Conley
                                                       Criminal Chief
                                                       U.S. Attorney's Office
                                                       District of the Virgin Islands
                                                       5500 Veterans Drive
                                                       St. Thomas, VI 00802
                                                       Telephone: 340-774-5757
                                                       Michael.Conley@usdoj.gov

                                                       *s/ Adam Sleeper*
                                                       Adam Sleeper
                                                       First Assistant United States Attorney
                                                       U.S. Attorney's Office
                                                       District of the Virgin Islands
                                                       5500 Veterans Drive
                                                       St. Thomas, VI 00802
                                                       Telephone: 340-774-5757
                                                       Adam. Sleeper@usdoj.gov