IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

UNITED STATES OF AMERICA,

v.

RICHARDSON DANGLEBEN, JR.,

Defendant.

Case No. 2023-cr-00072

**GOVERNMENT'S RESPONSE IN OPPOSITION TO THE DEFENDANT'S MOTION TO STRIKE THE NOTICE OF INTENT TO SEEK THE DEATH PENALTY**

The United States of America, by and through Adam F. Sleeper, Acting United States Attorney for the District of the Virgin Islands, and Michael J. Conley, Assistant United States Attorney, respectfully submits this Response in Opposition to defendant Richard Dangleben, Jr.'s Motion to Strike the Government's Notice of Intent to Seek the Death Penalty (ECF No. 179).

**BACKGROUND**

On July 7, 2023, the United States filed a complaint that charged the defendant with, among other things, the first-degree murder of Detective Delberth Phipps, Jr. (ECF No. 1). On October 13, 2023, a federal grand jury in this district returned an indictment, charging the defendant with, among other things, the death-eligible offense of use of a firearm during a crime of violence resulting in death, in violation of 18 U.S.C. § 924(j)(1). ECF No. 24. A jury trial was scheduled for December 11, 2023. ECF No. 27.

On November 7, 2023, the defendant successfully moved the Court to designate the case as "complex" for purposes of the Speedy Trial Act (*see* 18 U.S.C. § 3161). ECF. Nos. 30, 38. On

1

November 16, 2023, the Court ordered the government to file any notice of intent ("NOI") to seek the death penalty (*see* 18 U.S.C. § 3593(a)) no later than January 12, 2024. ECF No. 35. Six days later, this Court continued trial to October 28, 2024. ECF No. 38.

On January 12, 2024, the government successfully moved to extend its NOI deadline to February 12, 2024. ECF Nos. 40, 46. On February 7, 2024, the government filed notice that it did not intend to seek the death penalty. ECF No. 47. On November 7, 2024, this Court continued the jury trial for an indeterminate date. ECF No. 90.

On February 5, 2025, The Attorney General issued a memorandum, entitled *Reviving the Federal Death Penalty and Lifting the Moratorium on Federal Executions,*[1] which directed a review of the prior administration's decisions not to seek the death penalty. On February 12, 2025, the government filed a motion to stay proceedings to accommodate the review. ECF No. 122. That week, the defendant moved to continue a pending omnibus pretrial hearing and requested the appointment of learned counsel. *See* ECF No. 126, 127. This Court granted the defendant's requests and deferred the rescheduling of the pretrial hearing. ECF Nos. 132, 133. On February 21, 2025, the defendant filed an opposition to the government's motion to stay . ECF No. 129. The government's reply was filed on March 2, 2025 (ECF No. 134), prompting a surresponse on March 10, 2025 (ECF No. 140).

Following a status conference to address the possibility of a revised decision to seek the death penalty, the Court ordered supplemental briefing to address judicial estoppel and laches. ECF No. 142. The defendant filed his supplemental brief on March 20, 2025. ECF No. 146. On March 28, 2025, the government filed a response. ECF. 148.

On April 16, 2025, the grand jury returned a superseding indictment that included a notice

---

[1] The Memorandum is available at https://www.justice.gov/ag/media/1388561/dl (last visited July 2, 2025).

of special findings under the Federal Death Penalty Act. ECF No. 152. On May 16, 2025, this Court denied the government's motion to stay. ECF No. 154. On May 20, 2025, it scheduled trial for October 6, 2025. ECF No. 157. The next day, the government filed its NOI.

On June 20, 2025, the defendant filed a Motion to Strike the government's notice. ECF No. 179. This Opposition follows.

## ARGUMENT

**I.    EXIGENCIES WILL EXCUSE ANY FAILURE TO COMPLY WITH THE COURT'S EARLIER DEADLINE**

This Court set a 2024 deadline for the NOI that the government satisfied, when it timely announced it would not pursue capital punishment. The Court, however, imposed that deadline in anticipation of a trial schedule that it has since revised. The vacatur of the earlier trial date effectively vitiated the necessity of an NOI deadline to ensure reasonable notice under § 3593(a). Even if the deadline retains some efficacy, the Court should conclude that exigent circumstances permit its extension.

This Court enjoys inherent authority to control its docket. *Knoll v. City of Allentown*, 707 F.3d 406, 409 (3d Cir. 2013). In view of that authority, it can set deadlines for notices of intent to seek the death penalty. *See, e.g., Tsarnaev*, 2013 WL 5701582, at *2. Under that authority, the Court imposed a February 12, 2024 notice deadline, consonant with the then-existing trial date. *See* ECF No. 46 at 2. That deadline, as noted, sounded within the statutory and constitutional limitations on pursuit of the death penalty. *See id*. (acknowledging the court's scheduling authority but recognizing the government's obligation under § 3593(a) to file its notice "a reasonable time before the trial"). Because the trial date was vacated, the need to ensure preparation time through a February 12, 2024, notice deadline also ceased to exist.

The particulars of the case do not require fidelity to the original deadline. The case,

3

previously designated as complex (ECF No. 38), remains in its preliminary stages: trial was recently scheduled but no substantive motions have been decided as the hearing on the pretrial motions has not passed. Moreover, the defendant has now been appointed learned counsel. (ECF No. 133). Given the circumstances at hand, the Court should conclude that its initial notice deadline now lacks force. To the extent the Court disagrees, and finds the deadline retains its currency, identifiable exigencies should justify an extension, as contemplated in the order that established the time limit on notices (ECF No. 35).

Black's Law Dictionary defines "exigent circumstances" as "[a] situation that demands unusual or immediate action and that may allow people to circumvent usual procedures." Black's Law Dictionary 260 (8th ed.2004). *In re Anderson*, No. 06-00047S, 2006 WL 314539, at *2 (Bankr. N.D. Iowa Feb. 6, 2006); *see e.g.*, *Burns v. Swenson*, 430 F.2d 771, 779 (discussing the "exigencies of unusual or emergency situations); *Israel v. Odom*, 521 F.2d 1370, 1373 (7th Cir. 1975) (using "unusual" and "exigent" as synonyms).

In this case, the Department of Justice has experienced a swing in attitude toward capital punishment that satisfies the exigency requirement of the Court's order. The immediately preceding Attorney General, under whose tenure the government charged this case, expressed open skepticism of the death penalty. *See* Office of the Attorney General, Moratorium on Federal Executions Pending Review of Policies and Procedures (2021), available at https://www.justice.gov/archives/media/1149381/dl?inline (observing, "Serious concerns have been raised about the continued use of the death penalty across the country, including arbitrariness in its application, disparate impact on people of color, and the troubling number of exonerations in capital and other serious cases."). In contrast, the newly elected President and his Attorney General have both expressed enthusiastic support of the death penalty. *See, supra, Reviving the*

*Federal Death Penalty*.

These dramatic attitudinal changes are not only unusual in the history of the federal death penalty (*see generally* U.S. Dept. of Justice Bureau of Justice Statistics, Capital Punishment, 2021 — Statistical Table, Table 10 *available at* https://bjs.ojp.gov/document/cp21st.pdf (demonstrating steady employment of capital punishment over time)), but were unforeseen when this Court imposed its notice deadline. This unusual change in political leadership and federal death penalty policy should justify an extension of the February 12, 2024, deadline, if deemed necessary.

## II. THE TIMING OF THE GOVERNMENT'S NOTICE OF INTENT TO SEEK THE DEATH PENALTY WAS OBJECTIVELY REASONABLE

In cases selected for capital prosecution, the Federal Death Penalty Act (18 U.S.C. §§ 3591-3599 (the "FDPA")) requires the government, "a reasonable time before trial," to provide notice (the NOI) of its intention to seek a death sentence and, in the same document, allege the factors it will rely upon to justify its position. § 3593(a). The government complied with that requirement on May 21, 2025. *See* ECF No. 159.

In the wake of that filing, the defendant moved to strike the NOI as untimely, asserting the government failed to give adequate notice a reasonable time before trial. The government disagrees with the characterization of its filing as unreasonable given that it submitted the NOI more than four months before a trial amenable to further continuance.

Two federal appellate courts have addressed the standard for determining reasonableness under § 3593(a). In *United States v. Ferebe*, 332 F.3d 722 (4th Cir. 2003), the Fourth Circuit set out four non-exhaustive factors for assessing the reasonableness: "(1) the nature of the charges . . .; (2) the nature of the aggravating factors . . .; (3) the period of time remaining before trial, *measured at the instant the [notice] was filed and irrespective of the filing's effects*; and…(4) the status of discovery." *Id*. at 737. Under *Ferebe*, district courts have concluded that "if a trial date is

5

continued because the filing of the [notice] is too close to the trial date, the [notice] is per se unreasonable. *See United States v. Ponder*, 347 F. Supp. 2d 256, 267 (E.D. Va. 2004).

In *United States v. Wilk*, 452 F.3d 1208 (11th Cir. 2006), the Eleventh Circuit enumerated similar factors for assessing reasonableness under the totality of the circumstances. *Id*. at 1221. Unlike the Fourth Circuit, however, the Eleventh determined that a court need not limit its analysis to the scheduled trial date. *Id*. at 1223. Instead, "[w]here a district court determines that the [notice] was filed at a time when either party, particularly the defense, would reasonably be unprepared for a capital trial on the previously scheduled trial date," the district court may grant a continuance and assess reasonableness with respect to the revised date. *Id*. at 1223-25. This Court should follow *Wilk*.

The rule in *Wilk* relies on a more natural construction of the reasonable time before trial rule set forth in § 3593(a). With any question of statutory interpretation, the courts should read the statute using the normal meaning of its words. *Penn v. City of Montogomery Ala.*, 381 F.3d 1059, 1062 (11th Cir. 2004) *Penn. v. City of Montgomery, Ala.,* 381 F.3d 1059, 1062 (11th Cir. 2004) (*quoting Horton Homes, Inc. v. United States,* 357 F.3d 1209, 1211 (11th Cir. 2004)) (quoting *Consolidated Bank, N.A. v. United States Dep't of Treasury,* 118 F.3d 1461, 1463 (11th Cir. 1997)); *see also United States v. DBB, Inc., 180 F.3d 1277, 1281 (11th Cir. 1999) (stating* that "[t]he starting point for all statutory interpretation is the language of the statute itself"*).*

*Ferebe* suggests that a court may not effectively address the concerns raised by a motion to strike a death notice as untimely by postponing the trial. *See* 332 F.3d at 737-38. As such, the only remedy would be to strike the government's death notice. *Id*. The defendant argues he would be unprepared to defend against a capital prosecution. *See* ECF No. 176 at 42. As such, the only remedy, relying on *Ferebe*, would be to strike the government's notice to seek the death penalty.

6

*Id*. at 43. However, section 3593(a) requires the government to give notice of its intent to seek the death penalty, a reasonable time before trial. There is no language in the statute that would suggest the remedy for failure to file the death notice a reasonable time before trial is to strike the notice. The statute is silent on the remedy. An equally plausible reading of the statute is that the language was inserted so that it would assure that the defendant had an adequate time to prepare, not that he would escape the death penalty all together. Continuing the trial would address the concerns raised by the defendant.

*Nature of the charges.* The indictment and superseding indictment both charge a single capital crime—use of a firearm during a crime of violence resulting in death (§ 924(j)). The superseding indictment only adds a predicate offense to the charge—possession with intent to distribute marijuana, which was previously charged as a § 924(c) predicate in Count Four—though the notice of special findings provides an indication of specific theories the government will pursue at trial, *compare* ECF No. 24 (charging § 924 as murder under 18 U.S.C. § 1111 without specification of intent); *with* ECF No. 159 at 8 (alleging intentional killing of the victim). This Court has designated this case as complex on November 22, 2023 (ECF No. 38), and the nature of the principal charge has not changed since that time. Indeed, the evidence underlying that charge remains unaltered and contained within discovery disclosures completed in 2024.

*Nature of the aggravating factors.* Similarly, the alleged aggravating factors were virtually all contained in the allegations set forth in the original indictment. *Compare* ECF No. 159 *with* ECF No. 24 and ECF No. 152. One factor alleges that the defendant attempted to kill multiple victims and in the commission of the offense, or in escaping apprehension for it, he created a grave risk of death to one or more persons in addition to the victim and that the defendant intentionally killed or attempted to kill more than one person in a single criminal episode. *See* ECF No. 159.

The original indictment indicated much the same, alleging that the defendant fatally shot Detective Phillips and fired at Shahim Skeete, another police officer responding to scene. *See* ECF No. 24 at Count 7 and Count 10. The NOI also alleges that the defendant committed other charged crimes of violence, targeted law enforcement officers, and was on pretrial release from a violent crime at the time he committed the charged offenses. The original indictment likewise charged other crimes of violence, namely attempted first degree murder, first degree assault, and third-degree assault. It also states that the intended targets were law enforcement officers engaged in their official duties, and specifically alleges, in Count Six, that the defendant was under indictment for crimes in the Superior Court of the Virgin Islands. *See id*. at Counts 6-13. In preparing to defend against those allegations in the original indictment, the defendant necessarily prepared to defend against them as set forth in the NOI.

Attempting to demonstrate an additional and unforeseen burden in the NOI, the defendant argues that victim-impact aggravator unfairly alters the horizon. Victim impact evidence is, however, universal and an important aspect of any case involving an intentional murder. *Payne v. Tennessee*, 501 U.S. 808, 820 (1991) ("Wherever judges in recent years have had discretion to impose sentence, the consideration of the harm caused by the crime has been an important factor in the exercise of that discretion."), *United States v. Santana*, 908 F.2d 506, 507 (9th Cir. 1990) (Use of victim impact statements at sentencing does not violate the Supreme Court's holding in *Booth v. Maryland*, 482 U.S. 496 (1987)).

Additionally, the defendant complains that the government's use of the defendant's involvement in Keith Jenning's murder will require him to defend against two murders instead of one. That likelihood has always existed. The defendant could open the door to the admission of that evidence in the government's case-in-chief. So, the fact that this could be a capital prosecution

8

does not change the calculus. Moreover, the discovery surrounding the Jenning's murder has been turned over in full, and the parties have discussed possible stipulations prior to the filing of the notice of intent to seek the death penalty. So, in preparing a defense for Count 6, the defendant has also been preparing to defend against the non-statutory aggravating factor in the government's notice.

Although the defendant contends that significant time and resources would have to be devoted to defend against the government's aggravating factors, much of the mitigation investigation is inherent to formulating defenses to the original indictment. *See e.g., United States v. Le*, 311 F.Supp.l.2d 527, 535 (E.D. Va. 2004) (explaining that the "aggravating factors require no additional investigation" because "an investigation into the facts and circumstances of charges in the indictment would undoubtedly take place in any event in preparation for [the defendant]'s defense to these capital charges during the guilt phase of the trial").

***Time remaining before trial.*** As this Court has recognized, an evaluation of timeliness under § 3593(a) involves "an inquiry into the objective reasonableness of the time between issuance of the death notice and the trial itself, in light of the particulars of the charged offense and the anticipated nature of the defense." ECF No. 46 at 4 (*quoting Ferebe*, 332 F.3d at 727). Given the variables at hand, courts have not set a brightline rule for the reasonability of notice filing, approving at least one filed 113 days before trial. *United States v. Le*, 311 F. Supp. 2d 527, 534-35 (E.D. Va. 2004) (finding 113 days reasonable); *see also, e.g.*, *Wilk*, 452 F.3d at 1221 (finding six month reasonable); *United States v. Breeden*, 366 F.3d 369, 374 (4th Cir. 2004) (same); *United States v. Ponder,* 347 F. Supp. 2d 256, 270 (E.D. Va. 2004) (finding four months reasonable). As discussed above, an assessment of the time before trial should include any justifiable continuance to accommodate a decision to pursue capital punishment. *See Wilk*, 452 F.3d at 1223-25; *see, e.g.*,

9

*United States v. McGriff*, 427 F. Supp. 2d 253, 270-72 (E.D.N.Y. 2006) (finding 12 days unreasonable but granting continuance to cure prejudice).

In this case, the government filed its notice 138 days before the October 6, 2025, trial date, several weeks greater than the period upheld in *Le*, which involved two murders, committed in a single incident, charged across four capital counts. *See* 311 F. Supp. 2d at 534-35. After reviewing that factual and procedural backdrop, the court held "the legal and factual issues presented by these charges do not appear 'so complex or atypical' that 113 days would be an unreasonably short period of time to prepare a defense."

By extension, a period of 138 days to prepare a defense in this case appears imminently reasonable. The defendant has had notice of the charged capital offense for several years, and the NOI largely serves to underscore the significance of facts innate to the crime, rather than adding allegations that would require a wholly new approach to the case. Given the nature of the charges and the defendant's access to discovery (*see infra*), he cannot maintain his complaints that the NOI requires him to prepare an entirely new case. *See* ECF No. 179 at 39. He has been preparing a defense since 2023. Learned counsel has been appointed, and time remains for pretrial motions practice. As such, this Court should find that 138 days provides enough time to prepare a defense for a capital murder trial. Assuming, arguendo, the Court disagrees, it maintains discretion and authority to grant the defendant a continuance under *Wilk*.

**Status of discovery.** Apart from victim-impact evidence and a handful of disclosures under *Giglio*[2], the discovery is complete. Discovery was produced electronically using USAfx. In situations where the files were too big, the defendant was provided with a thumb drive. The initial production occurred on October 2, 2023, and consisted of crime scene photos, police reports,

---

[2] *Giglio v. United States*, 405 U.S. 150 (1972).

bodycam footage, the defendant's interviews and witness interviews. Since October 2, 2023, the government has produced discovery on nine occasions. The majority of the discovery was produced in 2024. The government produced the evidence surrounding the Keith Jenning's homicide on June 27, 2025. That production included Kennings' autopsy photos, the police reports, and a video of the defendant at the scene. The victim-impact evidence is not voluminous at all. In fact, the government anticipates disclosing a handful of reports from the victim's immediate family.

***Reasonability***.   The government filed its NOI an objectively reasonable period before trial. As noted, the filing occurred more than four months before trial and did not meaningfully alter the factual landscape of this case, even if it amplified certain legal theories of the case.  Under the circumstances, the NOI does not require the defendant to substantially alter his years-long preparations for trial.  Even if this Court disagrees, it should permit the defendant more time to prepare for trial rather than striking the NOI.  As stated in *Wilk*, trial dates routinely change in murder cases, especially capital ones. 452 F.3d at 1224. A continuance, if justified here, would assure the defendant he has adequate time to prepare for trial without unduly penalizing the government for reassessing the legal and moral consequences of the defendant's actions.

### III.     THE GOVERNMENT PROPERLY CHANGED ITS POSITION ON PURSUIT OF THE DEATH PENALTY WITHOUT MOVING TO AMEND ITS PRIOR NOTICE ON THE SUBJECT

The defendant's contention that the government cannot reverse its position on pursuit of the death penalty must be rejected. The Nation's chief law enforcement officer, the Attorney General of the United States, ultimately decides whether the government will seek the death penalty. *Mitchell v. Forsyth*, 472 U.S. 511, 520 (1985); *United States v. Lee,* 274 F.3d 485, 489 (2001). The FDPA places a single temporal limitation on the filing of any notice of intent to seek

capital punishment: the government must file its notice "a reasonable time before the trial or before the acceptance by the court of a plea of guilty." § 3593(a).

Though the FDPA sets forth requirements for announcing a decision to seek the death penalty, it does not discuss or mandate the inverse. *See* § 3593(a). In short, the statute does not contemplate a notice of intent *not* to seek the death penalty. Courts sometimes call for such a filing, but the statute—designed to provide defendants with adequate notice of a forthcoming capital trial—is silent on the subject. *Id.* Admittedly, the statute requires a showing of good cause to justify amendments to an NOI, but no statutory provision obliges it to justify a change of position on the decision whether to pursue capital punishment in the first instance. *See id.*

The defendant argues the FDPA does not permit the government to reconsider a decision not to seek the death penalty, which he characterizes as "binding." *See* ECF No. 176 at p.32. But, again, the FDPA makes no mention of such an obligation, as it omits any mention of cases that proceed to trial in the absence of an NOI. Indeed, absent some contractual obligation or other demonstrable legal impediment, the government should retain its traditional charging discretion to advocate for any punishment permissible under the law.

Prosecutorial decisions are a "core executive constitutional function." *United States v. Armstrong*, 517 U.S. 456, 465 (1996). The decision to seek or not seek the death penalty or to reevaluate such a decision, lies squarely with the government. *See* 18 U.S.C. § 3593(a).

Presumably the government would have an obligation to honor an *agreement* not to seek the death penalty in exchange for a plea, but its unilateral decision in this case required nothing of value from the defendant, who has no commensurate right to enforce the prosecution's earlier representation about the death penalty. *Cf. United States v. Hodge*, 412 F.3d 479, 485 (3d Cir. 2005) (noting the government must strictly adhere to the terms of bargains it strikes with

defendants).

## IV. THE GOVERNMENT DID NOT WAIVE PURSUIT OF THE DEATH PENALTY, NOR IS IT ESTOPPED FROM DOING SO

*Waiver*. The defendant contends the Attorney General waived pursuit of the death penalty and acted in bad faith, or otherwise committed misconduct, when she elected to reconsider the prior administration's decision not to seek the death penalty. The Attorney General's exercise of discretion to review a prior decision does not constitute waiver. The Executive Branch has "exclusive authority and absolute discretion" to decide which crimes to prosecute, including the capital charges filed against the defendant. *See Trump v. United States*, 603 U.S. 593, 620 (2024) (*quoting United States v. Nixon*, 418 U.S. 683, 693 (1974)). This breadth of this discretion implies a right to reconsider any such decision rather than some sub silentio doctrine of waiver. Indeed, the Department of Justice has established uncontroversial procedures by which regularly reconsiders decisions to seek the death penalty, provisions the defense bar frequently invokes. *See* Justice Manual § 9-10.160; *e.g.*, *United States v. Bowers*, Crim. No. 19-292-RJC, 2023 W.L. 3198215, *2 (W.D. Pa. May 2, 2023) (noting a defense request to withdraw an NOI); *United States v. Sampson*, Cr. No. 01-10384-MLW, 2016 WL 70446, *1 (D. Mass. Jan. 6, 2016) (same).

Nothing more has happened in this case: the Executive Branch has exercised its traditional discretion to elect pursuit of a punishment prescribed by law. *See United Sates v. Peoples*, 360 F.3d 892, 896 (8th Cir. 2004) (affirming the denial of a motion to strike a death notice where the United States file the death notice, withdrew it at the penalty phase of the original trial, and then refiled it when the case was later retried). For want of any legal principle to the contrary, this Court should reject any argument that the government's initial decision on capital punishment waived its current desire to pursue it.

*Estoppel*. The defendant urges this Honorable Court to use judicial, equitable, or

13

promissory estoppel to prevent the government from changing its position on seeking the death penalty against the defendant. Those doctrines do not, however, apply to the case at bar. These doctrines operate to sanction parties that have acted in bad faith or engaged in misconduct. Because the government has done neither, it would be inappropriate to use estoppel to punish the government.

The narrow doctrine of judicial estoppel applies only if (1) the party to be estopped has taken two positions that are irreconcilably inconsistent, (2) the party's change in position was "in bad faith – *i.e.*, with intent to play "fast and loose with the court" and (3) no sanction short of judicial estoppel "would adequately remedy the damage done by the litigant's misconduct." *Montrose Med. Grp. Participating Sav. Plan v. Bulger*, 243 F.3d 773, 784 (3d Cir. 2001); *Klein v. Stahl GMBH & Co. Maschinefabrik*, 185 F.3d 98, 111 (3d Cir. 1999); *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.,* 81 F.3d 355, 360 (3d Cir. 1996). A finding of bad faith "must be based on more than" the existence of an inconsistency. *Klein* 185 F.3d at 111. The party subject to estoppel must have behaved in a culpable manner. *See Ryan Operations*, 81 F.3d at 362 (calling judicial estoppel an 'extraordinary remedy" that may not be employed unless the contradiction is used as a means of obtaining *unfair* advantage).

Similarly, a successful claim of equitable estoppel against the government requires a showing of affirmative misconduct in addition to the elements of judicial estoppel. *Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc.*, 467 U.S. 51, 64 (1984). Through this affirmative misconduct requirement, "[t]he Supreme Court has imposed a more stringent standard for estopping the government because there is a strong public interest in upholding the rule of law, even where hardship may result to individuals in particular cases." *Charleston Hous. Auth. v. U.S. Dep't of Agric.*, 419 F.3d 729, 739 (8th Cir.2005).

For promissory estoppel to apply, a movant must identify a promise that should have reasonably induced action or forbearance; demonstrate action or forbearance occurred and show that injustice can be avoided by only enforcing the promise. *CKSJB Holdings LLC v. EPAM Systems, Inc.* 837 Fed. App'x. 901, 905 (3rd Cir. 2020). Generally, this doctrine lies when the formal requirements of contract formation have not been satisfied but where justice would be served by enforcing a promise.

The government's court-mandated notice of its former intention not to seek the death penalty amounted to nothing more than a genuine expression of its then-existing plan for the case. It did not state or imply a promise against reconsideration, and it did not issue from negotiation or find any support via valuable consideration. At no point did the government make a promise to the defendant or mislead him or this Court. The defendant's motion to strike the government's notice of intent to seek the death penalty makes clear there is "no basis for doubting the veracity" of the no seek decision. ECF No. 176 at p. 51.

Indeed, the defendant fails to identify any evidence that the Attorney General acted in bad faith, or otherwise committed misconduct, when she elected to reconsider the prior administration's decision not to seek the death penalty in this case or any other. As the defendant concedes, the incumbent Attorney General expressly holds more favorable views on the death penalty than her predecessor. *See, supra, Reviving the Federal Death Penalty*. Accordingly, neither the initial decision to forgo the death penalty nor the current election to pursue it amounts to a "material misrepresentation." Instead, the conflicting notices reflect the sincere conclusions of two prosecutors duly exercising their broad discretion and judgment but reaching different results. It did not make the prior decision intentionally misleading.

Indeed, this Court has already held that judicial estoppel does not apply. *See* ECF No. 154,

15

at 4 n.6 ("The Court directed the parties to address in the supplemental briefs whether the doctrines of judicial estoppel or laches were applicable to the motion and issues presented therein. Order (ECF No. 142.) Upon consideration thereof, the Court agrees with the Government that neither doctrine applies and, therefore, does not address them herein.").

V.     THE GOVERNMENT'S NOTICE OF INTENT TO SEEK THE DEATH PENALTY DOES NOT VIOLATE THE FIFTH OR EIGHTH AMENDMENTS

The defendant argues that the government's prior no seek notice was a "promise" that he relied upon to his detriment and the government's reconsideration of the prior no seek violates the Fifth Amendment's due process clause. As noted, the initial notice was not a promise. It was not negotiated for consideration, and nothing in § 3593(a) prevented the government from reconsidering the decision.

Next, the defendant argues the Attorney General's decision to reconsider the prior no seek authorization was arbitrary and capricious. The FDPA provides sufficient limits on the discretion of sentencing bodies to withstand constitutional scrutiny. *Gregg v. Georgia*, 428 U.S. 153, 195 (1976). ("[T]he concerns expressed in *Furman* that the penalty of death not be imposed in an arbitrary or capricious manner can be met by a carefully drafted statute that ensures that the sentencing authority is given adequate information and guidance."); *see Jones v. United States*, 527 U.S. 373 (1999) (recognizing the constitutionality of the FDPA). Further, the Department's Capital Case Protocol ensures proper individualized consideration of the appropriate factors relevant to a case. *See generally* J.M. §§ 9-10.010-9-10.210. The defendant cites no authority for the proposition that reconsidering a prior no seek determination is arbitrary and capricious. Nothing of the sort occurred here: an Attorney General who prioritized capital punishment differently from her predecessor, appointed by an administration with different values, announced a systematic review of decisions amenable to revision. Different officials, in different

administrations can take different approaches to the same problems. In short, elections have consequences, and nothing about that bedrock reality of American democracy amounts to arbitrariness. *Wisconsin Educ. Ass'n Council v. Walker*, 705 F.3d 640, 659 (7th Cir. 2013) (Hamilton, J. conc.); *see, e.g.*, *Florida v. United States*, 660 F. Supp. 3d 1239, 1269 (N.D. Fla. 2023) (stating "there is nothing particularly surprising about the fact that the Biden Administration had different immigration policy preferences and priorities than the Trump Administration. That fact alone does not make the challenged policies illegal").

The Attorney General's decision to reconsider the prior no seek notice is neither cruel nor unusual. The Eighth Amendment provides no blanket prohibition to the death penalty. *Gregg*, 428 U.S. at 168-87; *see also Glossip v. Gross*, 135 S. Ct. 2726, 2732-33 (2015) (reaffirming *Kennedy v. Louisiana*, 554 U.S. 407, 420 (2008). The defendant cites no authority for the proposition that facing the possibility of the death penalty, after the government reconsidered its earlier intent not to seek the death penalty, constitutes cruel and unusual punishment.

## CONCLUSION

Based on the foregoing reasoning and authority, the Court should deny the defendant's motion to strike the death penalty.

Respectfully submitted,

ADAM F. SLEEPER
Dated: July 14, 2025                    ACTING UNITED STATES ATTORNEY

s/ *Michael J. Conley*
Michael J. Conley
Assistant United States Attorney
5500 Veteran's Drive, Suite 260
St. Thomas, VI 00802
(340) 715-9414
Michael.Conley@usdoj.gov